UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-783 (DSD/JMM)

Richard N. Hendricks,

Plaintiff,

v.

**ORDER**

Keith G. Rasmussen, M.D.,

Defendant.

Richard N. Hendricks, 196 Christie Lane, Twin Lakes, WI 53181, pro se

Thomas S. Fraser, Esq., Lora E. Mitchell, Esq., and Fredrikson & Byron, 1100 International Center, 900 Second Avenue South, Minneapolis, MN 55402, counsel for defendant

This matter is before the court on defendant's motion to dismiss or for summary judgment. Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

Plaintiff Richard N. Hendricks ("Hendricks") filed this pro se action under 42 U.S.C. § 1983 alleging that Keith G. Rasmussen, M.D. ("Rasmussen") deprived him of his civil rights and violated Minnesota State law by ordering his involuntary commitment. On

FILED July 27, 2001
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 7-27-01
Deputy Clerk's Initials ______

April 4, 2000, Hendricks met with Rasmussen, a psychiatrist at the Mayo Clinic in Rochester, Minnesota, at the request of Hendricks's neurologist, Allan Aksamit. (Compl. ¶ 1.) During his meeting with Rasmussen, Hendricks became annoyed that Rasmussen left the room twice to answer pages and kept checking his watch. (Id. ¶ 3.) Hendricks left before Rasmussen had completed his interview. (Id.) Shortly after ending his meeting with Rasmussen but before he had left the clinic, Hendricks was intercepted by six Mayo Clinic security guards and two Rochester police officers and taken to St. Mary's Hospital in Rochester. (Id. ¶ 4.) Pursuant to Rasmussen's directive, Hendricks was placed on an involuntary 72-hour hold at the hospital. (Id.)

Hendricks alleges that Rasmussen's decision to initiate involuntary commitment against him was an act of bad faith in violation of his civil rights and the Minnesota Civil Commitment Act ("MCCA"), Minn. Stat. Ann. § 253B.05. Rasmussen moves to dismiss plaintiff's claims or for summary judgment.

**DISCUSSION**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint on various grounds, including failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, the court takes all facts alleged in plaintiff's

complaint as true. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). In addition, the court must construe the allegations in the complaint and all reasonable inferences arising from the complaint in the light most favorable to the plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

When matters outside the pleadings are presented on a Rule 12(b)(6) motion and are not excluded by the court, the court must convert the motion to one for summary judgment. See Fed. R. Civ. P. 12(b)(6); Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 941, 948 (8th Cir. 1999). In this case, defendant has submitted a declaration and curriculum vitae from Rasmussen and various medical records regarding Hendricks and plaintiff has presented a news article about himself for the court's consideration. To the extent that the court relies on these additional documents in making its determination, defendant's motion will be treated as a motion for summary judgment under Fed. R. Civ. P. 56.

Rule 56(c) provides that summary judgment should be granted if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a plaintiff cannot support each element of its claim, summary judgment must be granted, because a complete failure of proof regarding an essential element necessarily renders all other

facts immaterial. Id. at 322-23. With these standards at hand, the court considers defendant's motion.

Rasmussen first contends that Hendricks's complaint must be dismissed because it does not adequately set forth the basis for the court's jurisdiction. The court has reviewed the complaint which briefly describes the events of April 14, 2000, including Hendricks's commitment to St. Mary's Hospital. In the concluding paragraphs, Hendricks asserts that Rasmussen "had no valid reason to take me prisoner" and claims that his "civil rights were taken away without probable cause" by Rasmussen. (Compl. ¶¶ 5-6.) Although there is no specific reference to constitutional rights or to a potential claim under 42 U.S.C. § 1983, the court is obliged to liberally construe a pro se complaint in favor of the pro se plaintiff. Haines v. Kerner, 404 U.S. 519, 520 (1972); Haggy v. Solem, 547 F.2d 1363, 1364 (8th Cir. 1977). Under this generous standard, the court finds that the cited language of the complaint sufficiently establishes that Hendricks is claiming a deprivation of his civil rights, therefore the court has federal question jurisdiction over this matter pursuant to 42 U.S.C. § 1983.

Section 1983 provides that:

> Every person who, under color of any statute ordinance, regulation, custom or usage of any State...subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and

> laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

A plaintiff alleging a Section 1983 claim must establish two elements: (1) a deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed "under color of" state law. Lugar v. Edmonson Oil Co., 457 U.S. 922, 930-31 (1982). The Supreme Court interprets the phrase "under color of" state law as the equivalent of the "state action" required under the Fourteenth Amendment. Rendell-Baker v. Kohn, 457 U.S. 840, 838 (1982). In other words, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Lugar, 457 U.S. at 937.

It is undisputed that involuntary confinement or civil commitment constitute a significant deprivation of liberty requiring due process protection. Addington v. Texas, 441 U.S. 418, 425 (1979). However, it is not clear whether Rasmussen, by signing the Notice to a Patient & Examiner's Statement in Support of Emergency Hospitalization, can be considered a state actor. Although the Eighth Circuit has not addressed the issue, the clear majority of courts that have considered the question agree that such conduct typically does not constitute state action. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 257-60 (1st Cir. 1994); Okunieff v. Rosenberg, 996 F. Supp. 343, 346-47 (S.D.N.Y.), aff'd

per curiam, 166 F.3d 507 (2nd Cir. 1999); Janicsko v. Pellman, 774 F. Supp. 331, 334-339 (M.D. Pa. 1991), aff'd without opinion, 970 F.2d 899 (3rd Cir. 1992); S.P. v. City of Takoma Park, 134 F.3d 260, 268-69 (4th Cir. 1998); Bass v. Parkwood Hosp., 180 F.3d 234, 241-43 (5th Cir. 1999); Ellison v. Carbarino, 48 F.3d 192, 195-97 (6th Cir. 1995); Spencer v. Lee, 864 F.2d 1376, 1378-82 (7th Cir. 1989)(en banc); Pino v. Higgs, 75 F.3d 1461, 1465-67 (10th Cir. 1996); Harvey v. Harvey, 949 F.2d 1127, 1130-32 (11th Cir. 1992). Only the Ninth Circuit has found circumstances under which the private actor's conduct constitutes state action. See Jensen v. Lane County, 222 F.3d 570 (9th Cir. 2000).

In Jensen, the appellate court was asked to determine whether contract services provided by licensed private physicians to municipal governments in the detention and examination of persons brought into treatment facilities by police officers as possible mental patients constitutes state action within the meaning of § 1983. The court noted that county employees initiated the evaluation process and there was significant consultation among various mental health professionals (including both private psychiatrists and county crisis workers). Under these facts, the court found that the defendant doctor and the county government had "undertaken a complex and deeply intertwined process of evaluating and detaining individuals who are believed to be mentally ill." Using the close nexus/joint action test, the court concluded that

the private physician defendant performing the evaluative services for the municipality was state actor for purposes of Section 1983 liability. Jensen, 222 F.3d at 575.[1]

The instant case is easily distinguished from Jensen because there is no evidence of an intertwining relationship between the state of Minnesota and Dr. Rasmussen. No governmental employee initiated the evaluation of Hendricks, nor was there significant consultation between Rasmussen and public health officials before committing Hendricks. (Decl. of Keith Rasmussen, Exh. B, D.) The facts of this case are more similar to those of Bass and Okunieff, both cases in which the appellate court found no state action.

In Okunieff, the plaintiff (like Hendricks) initially visited the hospital for a physical consultation, was asked to see a psychiatrist by the physician, failed to maintain the appointment with the psychiatrist and was intercepted by security guards on the

---

[1] The Supreme Court has articulated several tests for determining whether a private party's conduct may constitute state action, including (1) the state compulsion test, (2) the close nexus/joint action test, and (3) the public function test. Under the state compulsion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). Under the close nexus/joint action test, state action may be found where the government has "so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974). Finally, the public function test is satisfied if the private party performs a function that is "'traditionally the exclusive prerogative of the State.'" Blum, 457 U.S. at 1005 (quoting Jackson, 419 U.S. at 353).

physician's orders. 996 F. Supp. at 346-47. In Bass, the plaintiff initially sought counseling from a private hospital and was referred to a psychologist. After the psychologist confirmed that plaintiff was experiencing psychotic and paranoid delusions, the hospital initiated a temporary involuntary commitment. 180 F.3d at 234. The court also notes that the relevant state statutes in Okunieff and Bass, like the MCCA, merely authorize private physicians to initiate involuntary commitments and in no way influence the decisions to commit. Okunieff, 996 F. Supp. at 349-350; Bass, 180 F.3d at 242.

Based on the similarity of this case to Okunieff and Bass, the court finds it appropriate to adopt the rationale of the Second and Fifth Circuits. Therefore, the court concludes that Rasmussen's act of initiating the 72-hour involuntary commitment of Hendricks does not qualify as state action. Accordingly, summary judgment as to Hendricks's federal civil rights claim is appropriate.

Hendricks also alleges that Rasmussen's actions violated the Minnesota Civil Commitment Act, Minn. Stat. Ann. § 253B.05. Since the lone federal claim has been dismissed, the court declines to exercise supplemental jurisdiction over this state law claim and dismisses the claim without prejudice. See 28 U.S.C. § 1367(c)(3); Marshall v. Green Giant Co., 942 F.2d 539, 549 (8th Cir. 1991); see also Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir.

1990) (holding that courts should "exercise judicial restraint and avoid state law issues wherever possible").

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment (Doc. No. 4) is granted.

2. Plaintiff's civil rights claim (Doc. No. 4) is dismissed with prejudice.

3. Plaintiff's state law claim (Doc. No. 4) is dismissed without prejudice.

**LET THE JUDGMENT BE ENTERED ACCORDINGLY**

Dated: July 27, 2001

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500